Phil S. Flemming (#014778)
YEN PILCH ROBAINA & KRESIN PLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@yprklaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Alisa Adkins, an individual, | No. |
|---|---|
| Plaintiff | |
| v. | **COMPLAINT** |
| Zovio, Inc., a Delaware Corporation, | |
| Defendant. | **Jury Trial Demanded** |

Plaintiff, Alisa Adkins, by undersigned counsel, for her Complaint against Zovio, Inc. alleges as follows:

**NATURE OF ACTION**

1. This action seeks judgment and remedies for Plaintiff against Defendant Zovio for unlawful race discrimination and retaliation, pursuant to Title VII, 42 U.S.C. §§ 2000e, *et seq*., the Arizona Civil Rights Act, A.R.S. §§ 41-1401, *et seq*., and the Arizona Employment Protection Act, A.R.S. §§ 23-1501 and 23-1502.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff is a United States citizen residing in Maricopa County, Arizona.

3. Defendant Zovio, Inc. is a Delaware corporation registered as a foreign corporation to conduct business throughout Arizona, with its headquarters located in Maricopa County, Arizona.

4. At all relevant times, Defendant has had at least 15 employees.

5. This Court has proper jurisdiction based upon federal question jurisdiction, under 28 U.S.C. § 1331.

6. This Court also has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

7. Venue is found in this District Court, pursuant to 28 U.S.C. § 1391(b)(2), because the events alleged to be unlawful giving rise to the claims occurred in this District.

8. Plaintiff timely filed her charge of discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC on or after December 15, 2021.

9. This action is timely commenced within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## FACTUAL ALLEGATIONS

10. Plaintiff is a female of African American race.

11. Defendant's predecessor entity hired Plaintiff May of 2019 as a Student Advisor and promoted her seven months later to Senior Student Advisor.

12. Defendant awarded Plaintiff a raise of $5,000 annually based on her performance.

13. Defendant company underwent multiple leadership changes and rapid growth during Plaintiff's employment.

14. Dustin Phillips became Plaintiff's direct supervisor late in 2020.

15. Defendant conducted a company Town Hall meeting on November 6, 2020 to address the company changes.

16. During the November 6, 2020 Town Hall, the participants were muted and questions or comments were typed into the chat box for the presenters David Yang and Nimit Maru, who had founded the company.

17. During the November 6, 2020 Town Hall meeting, Plaintiff submitted a question via the chat box: "Do you regret being acquired by Zovio? All of the changes with the culture, Fullstack values which don't seem to have anymore value, it feels like with certain teams and departments the Titanic has hit the iceberg and we are slowly sinking."

///

18. Mr. Yang read the question posed by Plaintiff aloud and became visibly upset.

19. Mr. Yang replied to Plaintiff and anyone else who had similar questions in a threatening manner, "if you don't want to work here then you should go somewhere else."

20. Plaintiff was shocked and humiliated by Mr. Yang's dismissive attitude to her sincere concern.

21. Plaintiff received comments from multiple co-workers who had attended the Town Hall that they agreed that the company culture had changed and they were concerned.

22. One co-worker wrote to an employee group about Plaintiff's chat box comment: "Very Serious: I'm gonna reach out to Ali [Plaintiff], who asked that very tough 'Titanic' question in chat.  David [Yang] implied retaliation in front of everyone: e.g. 'you should talk to your manager and consider if this company is the right place for you.' Ali needs a union card yesterday."

23. Two weeks after the Town Hall meeting, on November 20, 2020, Amy Dearth who was then Plaintiff's direct supervisor issued a Verbal Warning in writing placed in the personnel file for Plaintiff having an "inappropriate tone" and behaviors that "can make others feel uncomfortable because it is a representation of the entire department and can reflect poorly on individuals."

24. Ms. Dearth told Plaintiff she had not wanted to prepare the verbal "write up" but was required to do so at the insistence of Jim Gardner in Human Resources and Dustin Phillips, the Vice President of Enrollment.

25. Ms. Dearth explained to Plaintiff that Mr. Phillips added the following to Plaintiff's performance review, which Ms. Dearth had not agreed with: "Your behaviors and engagement have also impacted your performance as a Senior Student Advisor."

26. Ms. Dearth confirmed to Plaintiff that she was the top performer in phone calls and emails from January through November 2020 and top performer in Closed Enrolled students, when the write up was issued.

///

27. The criticism of her work performance stunned Plaintiff and distressed her because she knew her performance exceeded most co-workers and company expectations.

28. Ms. Dearth informed Plaintiff that the write up required weekly one-on-one meetings to review Plaintiff's work performance and behavior.

29. Ms. Dearth resigned in December 2020.

30. During December 2020, Ms. Dearth completed a rating and ranking for feedback for Mr. Phillips, before her departure from the company. Ms. Dearth completed ratings and rankings to use in the performance review for Plaintiff and her other direct reports. Ms. Dearth informed Plaintiff that she was rated at the highest rank in every category.

31. Plaintiff had no one-on-one meetings after Ms. Dearth left, and Mr. Phillips held his first one-on-one meeting with Plaintiff on February 18, 2021.

32. During the February 18, 2021 one-on-one meeting, Mr. Phillips did not inform Plaintiff of any performance concerns.

33. Defendant delivered Plaintiff's 2020 Performance Review on March 21, 2021, where Mr. Phillips rated her at the lowest rate of 1 out of 5 ("developing") citing her "lack of positive attitude has negatively impacted the Student Advising team and the organization."

34. Plaintiff was appalled at the rating and comment because Mr. Phillips had not even supervised her for the 2020 year and because Plaintiff knew her direct supervisor Ms. Dearth had given her the highest positive feedback possible on the rating and ranking give to Mr. Phillips before Ms. Dearth's resignation.

35. During the March 21, 2021 performance review meeting between Mr. Phillips and Plaintiff, he criticized Plaintiff for "stirring the pot" and having a "negative attitude," and accused her of not treating all applicants fairly.

36. Mr. Phillips criticized Plaintiff for not communicating with an applicant but Plaintiff explained she had called that applicant on March 4, 2021 and that the applicant's concerns about a lack of response involved only the previous Student Advisor, Ms.

Peterson who is Caucasian.

37. Mr. Phillips' rating and criticisms contradicted the information that Ms. Dearth had given and her guidance throughout the 2020 performance year.

38. Defendant rated Plaintiff's performance below her colleagues, including Ms. Peterson who was the root of the criticism Mr. Phillips misdirected to Plaintiff.

39. The colleagues who work with Plaintiff are not African American. They were treated more favorably by Defendant than Plaintiff who is African American.

40. Mr. Phillips explained that his criticism of Plaintiff's treatment in the 2020 Performance Review was based in part on an accusation that she had provided more favorable treatment in March of 2021 to a Black applicant who applied to the Opportunity Fund. The Opportunity Fund is geared to applicants of minority groups.

41. Mr. Phillips' criticisms unfairly focus on Plaintiff's work with applicants who are Black, African American.

42. Defendant's criticisms and low performance rating of Plaintiff were unfair and discriminatory, not properly based on her performance during 2020.

43. Defendant based its compensation review of Plaintiff on the 2020 Performance Review and awarded her a raise of $0.24 per hour, which was significantly less than the raise increase given to her non-Black co-workers.

44. Some or all of Plaintiff's non-Black co-workers received a raise of $1.08 per hour based upon their 2020 Performance Reviews.

45. Based on the disparate raises, the Senior Student Advisors who previously received the same rate of pay for the same work was altered and now the non-Black Senior Student Advisors receive a significantly higher wage for the same work.

46. None of the non-Black Senior Student Advisors received a Verbal Warning or a lowered rating for performance although their 2020 performance measurements were lower than Plaintiff.

47. On April 29, 2021, Mr. Phillips notified Plaintiff that a new manager, Aja Armendariz, would sit in on their regular one-on-one meeting. No reason was given.

48. Once the April 29, 2021 meeting began, Mr. Phillips delivered a "Written Warning" to Plaintiff, with no advance warning, and it was obvious that Ms. Armendariz was there to witness it.

49. Mr. Phillip failed to identify these concerns to Plaintiff before escalating management action to a written warning.

50. Mr. Phillips, in the April 29, 2021 meeting, accused Plaintiff of blocking out time on her calendar after being told not to do that, but this was the first time he had raised the concern or counseled her about blocking time.

51. Mr. Phillips claimed he had cautioned Plaintiff about blocking time on February 4 and 5, but she had no communication with him until February 18, 2021.

52. No company policy prohibited blocked time and other co-workers blocked time on their calendars for work such as team meetings or time to catch-up on work.

53. Other non-Black employees were not disciplined for doing so.

54. Plaintiff stopped blocking time after being told by Mr. Phillips.

55. Plaintiff observed on the calendar that co-worker Ms. Peterson blocked 2 hours of time from 7 a.m. to 9 a.m. for "Morning email and updates," and another 2 hours from 3 p.m. to 5 p.m. for "Project" time.

56. Plaintiff observed on the calendar that co-worker Mr. Hooker blocked time from 7 a.m. to 8 a.m. for "Email/ Calendar Check" and from 3:30 p.m. to 6:30 p.m. for "COTD."

57. Other Student Advisors also blocked time on their calendars with notes such as "Busy."

58. Defendant did not criticize or discipline Ms. Peterson, Mr. Hooker or the other Student Advisors, who are Caucasian, for blocking time.

59. Defendant's criticisms of Plaintiff for block time are adverse and disparate treatment based on her race and/or color.

60. Also during the April 29, 2021 meeting on the Written Warning to Plaintiff, Mr. Phillips complained that her lighting on Zoom meetings was dark.

61. Plaintiff does not purposely set her Zoom to a dark image and does what she can with the company laptop that is more than six years old. She requested a newer laptop.

62. Other co-workers also appear as dark images on Zoom meetings but Defendant has not criticized or disciplined them.

63. Mr. Phillips criticized Plaintiff as having a "negative attitude" which he ignores in other employees who are not Black females.

64. Defendant's management established Key Performance Indicators (KPIs) during March 2021 but Mr. Phillips unfairly criticized Plaintiff in the Written Warning that she fell short of the KPI expectations for January and February 2021.

65. According to the Utilization Report emailed to all Student Advisors on March 29, 2021, none of Plaintiff's co-workers satisfied the newly established KPIs but only Plaintiff was criticized and warned about her performance.

66. Despite being the only Senior Student Advisor to receive a performance warning, Plaintiff's performance exceeded that of her Caucasian co-worker Mr. Hooker regarding engagement, emails, and overall utilization.

67. When Plaintiff has received compliments from applicants and other departments, Defendant has ignored them in comparison to the praise shared when compliments are made to employees who are Caucasian.

68. The adverse actions and criticisms of Plaintiff evidence discriminatory treatment compared with her co-workers who are not African American.

69. Plaintiff complained to Defendant by her representative's letter dated June 14, 2021 about the ongoing discriminatory adverse actions.

70. Defendant responded on September 2, 2021 that it completed a "thorough investigation" and found no wrongdoing or bias.

71. Plaintiff informed Defendant that the work conditions were "objectively difficult or unpleasant . . . that a reasonable employee would feel compelled to resign." *See* A.R.S. § 23-1502(A)(1).

72. Plaintiff gave Defendant notice of her intent to resign "because of these

1 conditions" if the employer failed to respond to the identified concerns. *Id.*

2  73. After Plaintiff gave notice of the objectively difficult or unpleasant working conditions, Defendant failed to take corrective action in response.

74. Defendant had reassigned Ms. Armendariz during summer 2021 as the direct supervisor of Plaintiff and other Student Advisors and also implemented a quarterly review process of employees to provide better feedback.

75. On October 5, 2021, Ms. Armendariz held a one-on-one video conference with Plaintiff and falsely accused Plaintiff about interactions with a student and lied about a formal complaint being filed concerning the incident.

76. Plaintiff confirmed the accusations were false.

77. Plaintiff replayed the October 5th video conference recording with Caucasian coworkers Carlton Shank, Melissa Peterson, and Aaron Hooker who all confirmed that Plaintiff was treated more harshly than they were by Ms. Armendariz and Mr. Phillips.

78. Plaintiff and coworkers complained about Ms. Armendariz's unfair treatment, on October 8, 2021, and they were told an HR investigation would be undertaken.

79. Ms. Armendariz continued to treat Plaintiff harshly and escalated retaliation against Plaintiff.

80. Ms. Armendariz cancelled the regular Student Advisor team meeting scheduled for December 9, 2021 and, the morning of December 10, 2021, was present at the department-wide meeting with Mr. Phillips.

81. The afternoon of December 10, Ms. Armendariz set a meeting with Plaintiff via Zoom for 3 PM.

82. At 3 PM on December 10, 2021, Ms. Armendariz and a representative of Human Resources, Brenda Ellerbroek, commenced the Zoom meeting by terminating Plaintiff. That meeting lasted only a few minutes.

83. During the Zoom meeting, Ms. Armendariz told Plaintiff the termination was "due to performance issues and other reasons." Ms. Armendariz abruptly ended the

meeting, saying the Human Resources representative would be in touch with paperwork and if there were questions.

84. Plaintiff successfully had enrolled more than two million dollars of student tuition for Defendant during the 2021 calendar year despite facing criticisms, adversity, and hostility from Mr. Phillips and Ms. Armendariz.

85. The negative actions of the Verbal Warning, Written Warning, diminished wage raise, lowered 2020 Performance Review continued to adversely impact Plaintiff's employment.

86. Plaintiff continued to receive lower wages than her co-workers based on the unfair changes to her 2020 Performance Review ratings and the harm of Mr. Phillips rating continue to detract from her successful work performance.

87. Plaintiff performed at the high end of the expectation metrics and still was subjected to adverse treatment by Defendant.

88. Mr. Phillips and Ms. Armendariz continued in the chain of Plaintiff's supervisors.

89. Defendant's termination of Plaintiff has caused her damages and continues to cause damages based on lost income, lost benefits, lost future income and benefits, and emotional distress.

90. Plaintiff has suffered and continues to suffer financial harms and damage to her personal and professional reputations from the adverse actions of Defendant, by manager Mr. Phillips.

91. Defendant's wrongful conduct was intentional and done with malice and reckless disregard for Plaintiff's rights.

92. Plaintiff has suffered damages resulting from Defendant's unlawful discrimination and retaliation for her protected activities. Her harms and damages include back pay and benefits, lost front pay and benefits, retirement benefits, harm to her profession and reputation, emotional distress, and anxiety.

93. Plaintiff seeks, to the extent permitted by law, the full panoply of make whole

remedies and, additionally, an award of punitive damages based upon Defendant's egregious wrongful conduct and to deter similar unlawful conduct in the future.

### Claim One

### Violation of Title VII of the Civil Rights Act of 1964, as Amended

94. Plaintiff incorporates all prior allegations as though fully set forth herein.

95. Title VII, 42 U.S.C. §§ 2000e, *et seq*. prohibits discrimination on the basis of race or color in employment.

96. Defendant is an employer and Plaintiff an employee within the definitions of Title VII, 42 U.S.C. §§ 2000e(b) and (f).

97. Defendant's actions as alleged constitute unlawful discrimination on the basis of race or color in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

98. Defendant unlawfully subjected Plaintiff to discrimination and disparate treatment based on her race or color, contrary to the prohibitions of Title VII.

99. Defendant treated Plaintiff adversely and criticized her for conduct that it did not criticize similar conduct of her co-workers who are not Black or African American.

100. Defendant's unlawful conduct deprived Plaintiff of equal employment opportunities, employment actions, and wages.

101. Defendant acted intentionally with malice or reckless indifference to Plaintiff's protected rights under Title VII.

102. As a result of Defendant's discrimination, Plaintiff has suffered damages, including lost wages and benefits, lost future wages and benefits, retirement benefits, harm to her profession and reputation, emotional distress, and anxiety.

103. Plaintiff seeks the full remedies available under law, including equitable and compensatory relief.

104. Plaintiff seeks award of punitive damages based upon the egregiousness of Defendant's conduct, to the extent permitted by law.

105. Plaintiff also seeks to recover her attorneys' fees and costs to the extent permitted by law.

**Claim Two**

**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as Amended**

106. Plaintiff incorporates all prior allegations as though fully set forth herein.

107. Title VII, 42 U.S.C. § 2000e-3, prohibits retaliation against an employee who opposed unlawful employment practice or engaged in protected activity under Title VII.

108. Defendant's ongoing adverse actions as alleged above constitute unlawful retaliation for Plaintiff's activities protected under Title VII, 42 U.S.C. § 2000e-3.

109. After Plaintiff complained of unfair treatment, Defendant unlawfully subjected Plaintiff to retaliation, in violation of Title VII.

110. As a result of Defendant's unlawful, retaliatory conduct, Plaintiff has been deprived of equal employment opportunities protected by Title VII.

111. Defendant has acted intentionally with malice or reckless indifference to Plaintiff's protected rights to be free from retaliation under Title VII.

112. As a result of Defendant's retaliation, Plaintiff has suffered damages, including lost wages and benefits, lost future wages and benefits, retirement benefits, harm to her profession and reputation, emotional distress, and anxiety.

113. Plaintiff seeks the full remedies available under law, including equitable and compensatory relief.

114. Plaintiff seeks award of punitive damages based upon the egregiousness of Defendant's conduct, to the extent permitted by law.

115. Plaintiff also seeks to recover her attorneys' fees and costs to the extent permitted by law.

**Claim 3**

**Violations of Arizona Civil Rights Act, A.R.S. §§ 41-1401, *et seq*.**

116. Plaintiff incorporates all prior allegations as though fully set forth herein.

117. The Arizona Civil Rights Act ("A.C.R.A."), A.R.S. § 41-1463(B)(1), prohibits discrimination "against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's

race, color ...."

118. Defendant unlawfully discriminated against Plaintiff by subjecting her to disparate treatment on the basis of her race or color, as alleged above.

119. The discrimination resulted in lower wages, harsher work conditions, and embarrassment and anxiety for Plaintiff.

120. Pursuant to the A.C.R.A., it is unlawful to retaliate against an employee who has opposed or participated in a proceeding to oppose unlawful discrimination. A.R.S. § 41-1464(A).

121. Plaintiff opposed the Defendant's ongoing practice of unlawful race or color discrimination.

122. Plaintiff seeks the full remedies available under law, to be made whole, including equitable and compensatory relief.

123. Plaintiff also seeks to recover her attorneys' fees and costs to the extent permitted by law.

## Claim 4

## Violation of Arizona Employment Protection Act, A.R.S. §§ 23-1501 and 23-1502

124. Plaintiff incorporates all prior allegations as though fully set forth herein.

125. Pursuant to the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501(A)(3), an employee has a claim against her employer for wrongful termination of employment where the termination is in retaliation for disclosing a violation of state law.

126. The AEPA prohibits an employer from terminating an employee in retaliation for the employee's reasonable disclosure to a supervisor with authority to investigate of the employee's reasonable belief that the employer or its employee "has violated, is violating or will violate the Constitution of Arizona or the statutes of this state." A.R.S. § 23-1501(A)(3)(c)(ii).

127. Plaintiff reasonably disclosed violations of Arizona anti-discrimination law to her supervisor who had authority to investigate and act to correct the violations.

128. Plaintiff reasonably reported violations of the ACRA. for race and color discrimination after Defendant unfairly criticized Plaintiff, lowered her performance rating, and imposed warnings for matters that it tolerated from non-Black employees.

129. Defendant retaliated in violation of AEPA against Plaintiff after her protected activities of opposing unlawful discrimination under state law.

130. Plaintiff seeks the full remedies available under law, to be made whole, including equitable and compensatory relief.

131. Plaintiff also seeks to recover her attorneys' fees and costs to the extent permitted by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant Zovio, Inc. on each claim and awarding her:

A. Make whole, compensatory damages, for lost wages, benefits, emotional distress, and harm to reputation, in the amounts determined at trial;

B. Equitable relief including back pay and lost benefits, and front pay and requiring Defendant to institute policies to eradicate unlawful discrimination and retaliation in employment;

C. Punitive damages for Defendant's egregious, evil intent, and reckless disregard of Plaintiff's rights, in the amount determined at trial and consistent with law;

D. Prejudgment and post-judgment interest in the amounts permitted by law;

E. Attorneys' fees and costs against Defendant, as authorized by Court rules or statutes, including but not limited to 42 U.S.C. § 2000e-5(k), A.R.S. § 41-1481(J), A.R.S. § 12-341.01;

F. Taxable costs as the prevailing party;

G. Such further relief as this Court deems just and proper.

///

///

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims and issues set forth herein, to the extent permitted by law.

DATED this 10th day of March 2022.

                        YEN PILCH ROBAINA & KRESIN PLC

                        By  /s/ Phil S. Flemming
                            Phil S. Flemming
                            Attorneys for Plaintiff